IN RE, REPORT AND DECISION OF RAILROAD COMMISSIONERS, on petition of municipal officers of KENNEBUNK, asking them to determine the manner and conditions in which a certain town way may cross a track of the BOSTON AND MAINE RAILROAD, in said town.

York.    Opinion April 6, 1891.

*Railroad. Way. Crossing. R. R. Commissioners. R. S., c. 17, § 5; c. 18, §* *27; c. 51, § § 14, 15, 18; Stat. 1889, c. 282.*

Railroad commissioners have no jurisdiction to regulate the crossing of railroad tracks and public ways unless the former are laid under charter authority

so as to be maintained in the exercise of eminent domain, and become a railroad for public use, because when not so laid they are a mere convenience to be used or disused at pleasure, to be maintained or removed at the will of their owner; they are private property, subject to be taken in the exercise of eminent domain by the laying out of a public way, and are protected by the same rights of compensation.

## ON EXCEPTIONS.

From the bill of exceptions it appeared that the Railroad Commissioners having declined to make any determination or award upon the terms and conditions for crossing the track of the Boston and Maine railroad, with a town way, in Kennebunk, the petitioners, the municipal officers of the town, upon the coming in of the report of the commissioners, moved its acceptance by the court. This motion was opposed by the railroad and it asked for a recommittal with directions from the court that "the commissioners take jurisdiction in the premises; and determine if such railroad track was in fact constructed before the way, described by the petitioners in their petition, was located; whether said way (1,) shall be permitted to cross said track at grade therewith, or not; and (2,) the manner and condition of crossing the same; and (3,) apportion the expense of building and maintaining so much thereof as is within the limits of such railroad, between said inhabitants of Kennebunk and said Boston and Maine Railroad. And if otherwise, then to determine the manner and conditions of the crossing of said way by said railroad."

The court ordered the report to be accepted, and denied the motion to recommit. The railroad thereupon filed its exceptions to the ruling and refusal by the court.

The Railroad Commissioners give, in their report, the reasons for declining to take jurisdiction, which are as follows:

"It appeared from the view aforesaid and from the evidence elicited at said hearing, that the Boston and Maine Railroad prior to the location and establishment of said townway, had, at the request of the Mousam Manufacturing Company and others, and by permission of the land owners, constructed a spur track from their main line near the station in Kennebunk, to the manufacturing establishment of said company and others in said

village; that the town way aforesaid, as located, crosses said spur track near a shoe factory recently erected there.

"It is not the province or duty of the board to determine the legal rights of the parties interested; neither is it necessary to give any opinion relative thereto, further than to state the views of the board as to their jurisdiction of the subject matter.

"Section 18, of Chapter 51 of the Revised Statutes, is as follows:

" ' Any railroad corporation, under the direction of the railroad commissioners, may locate, construct and maintain branch railroad tracks to any mills, or manufacturing establishments, erected in any town or township, but not within any city through which the main line of said railroad is constructed, without the consent of the city council, and for that purpose said corporation shall have all the powers and rights granted, and be subject to all the duties imposed upon it by its charter.'

"That a railroad company may construct a spur track on their own land or over that of any other, by permission, to a manufacturing establishment, or elsewhere, provided the public interests are not concerned, we do not doubt; but if the public have in such lands, or thereafter acquire, rights or interests therein, we doubt if such track would be legally established, except by special charter or by the mode above prescribed. It did not appear that the Boston and Maine Railroad had ever been granted by charter, or otherwise, the right to locate and construct said spur track, except from the land owners above mentioned.

"Under these circumstances have the Boston and Maine Railroad by merely constructing a line of spur track, as above set forth, acquired 'all the powers and rights granted and are they subject to all the duties imposed upon them by their charter?' If not, then, as we view it, the town had the right to lay out and establish the town way without regard to such railroad track or the location of it. True, there is a track laid there, but is such track, placed there in the manner the evidence discloses it to have been, a railroad track within the meaning of the statutes?

In other words, does the mere laying down of sleepers and rails over a certain territory, by the permission of the land owners, constitute it a railroad within the meaning of the statute, so as to require town and cities in laying out ways over land where such tracks have been laid, to ask the Board of Railroad Commissioners to adjudicate upon the manner and conditions of crossing such track? This petition is based upon the provisions of Section 27 of Chapter 18 of the Revised Statutes as amended by Chapter 282 of the Public Laws of 1889, which provide that 'town ways and highways may be laid out across, over or under any railroad track, except that before such ways shall be constructed the Railroad Commissioners, on application of the municipal officers of the city or town, wherein such way is located, or of the parties owning or operating the railroad, shall upon notice and hearing, determine whether the way shall be permitted to cross such track at grade therewith or not, and the manner and conditions of crossing the same, and the expense of building and maintaining so much thereof, as is within the limits of such railroad shall be borne by such railroad company or by the city and town in which such way is located, or shall be apportioned between such company and city or town as may be determined by said Railroad Commissioners.' Evidently the legislature, in using the words 'railroad track,' intended it to be one having a legal location, established under prescribed forms of law; and that the company operating it 'shall have all the powers and rights granted, and be subject to all the duties imposed upon it by its charter.'

"So far as appears, this spur track has no defined location or legal limits upon the face of the earth. How then can the Board of Commissioners 'determine the manner and conditions,' this town way shall cross it, or how the 'expense of building and maintaining so much thereof as is within the limits of such railroad shall be borne?' From all the facts disclosed at said hearing, to our minds it is clear that the Board of Railroad Commissioners have no jurisdiction of the subject matter set forth in the petitioners' application, and therefore must decline to make any determination or award under same."

*G. C. Yeaton*, for Boston and Maine Railroad.
*W. L. Dame*, for Kennebunk.

HASKELL, J.    Railroads for public use are creatures of the legislature, either by charter or by organization under the statute. They are public highways; great thoroughfares of public travel and commerce; endowed with the right of eminent domain subject to the laws of the State. *Spofford* v. *B. & B. Railroad*, 66 Maine, 26.

By R. S., c. 51, § 14, "A railroad corporation, for the location, construction, repair and convenient use of its road, may take and hold, as for public uses, land and all materials in or upon it; but the land so taken shall not exceed four rods in width, unless necessary for excavation, embankment, or materials.

Section 15, requires a location according to the charter, to be filed and recorded with the County Commissioners, that may be amended by filing a new description.

Section 18, permits railroad corporations to locate branch tracks to mills or manufacturing establishments, in certain cases, under the direction of the railroad commissioners, with the powers granted by, and subjected to the duties imposed under their charters.

Revised Statutes, c. 18, § 27, as amended by c. 282 of 1889, permits public ways to be laid across railroad tracks, subject to regulation by the railroad commissioners, who may determine the manner of crossing, and the expense of building and maintaining the way within the limits of the railroad. This act refers to the tracks of railroad companies located under authority of eminent domain, either by the purchase of the right of way, or by the taking of it under the provisions of statute; for, in either case, the lands are held, as for public use. R. S., c. 51, § 14. That is, lands covered by the location required by § 15, are held, as for public use, under the exercise of eminent domain, whether purchased, or taken under process of law; and, in regard to them, the corporation "shall be subject to all the duties imposed upon it by its charter." § 18. There is no occasion to apply the act to railroad tracks not laid under charter

authority, so as to be held in the exercise of eminent domain and become a railroad for public use, because they are a mere convenience, to be used or disused at pleasure; to be maintained or removed as the owner wills to do.

They are exactly like private tramways or any other private estate, subject to be taken in the exercise of eminent domain. They, like other property, may be severed in two by the laying of a public way, and are protected by the same right of compensation. If their owner be a corporation, endowed with the exercise of eminent domain, it can proceed to locate such tracks across the public way, that has interfered, under the provision of statute expressly provided for such cases.

There is force in the argument that public safety requires that the intersection of railway tracks and roads should be under the control of the railroad commission. But, unless both are public ways, that is, constructed and maintained under the authority of law, or for public use, the public has no rights to be affected. If either be wanting in its public quality, the conflict is between public and private rights; and as the former are paramount, the laws regulating private rights are ample in such case. A railroad track not legally laid across a public way may be a nuisance, and not permitted to remain. R. S., c. 17, § 5. *State* v. *P. S. & P. Railroad*, 58 Maine, 46. If not a nuisance, nor prohibited by statute, it is the same as any other private crossing of a public way, to be used so as not to unreasonably endanger or impede public travel.

In the case at bar, the town located the way through the railroad track that was mere private property of the B. & M. Railroad, not clothed with a public quality under the provisions of its charter, for want of location as provided by statute.

It could be operated or disused; taken up or maintained by its owner at pleasure. It had no limits, within which the railroad commissions could adjudicate upon the conflicting rights and uses. The railroad rights in the premises are in no sense public, but only private. The railroad commission had no occasion to interfere.                    *Exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and WHITEHOUSE, JJ., concurred.